Carol and Stanley ZABKOWICZ,
Plaintiffs-Appellants,

v.

The WEST BEND COMPANY, a DIVI-
SION OF DART INDUSTRIES, INC.,
Larry Romans, Jeffrey Piotrowski,
Frank Rozina, Rick Cyrulik, Robert
Schommer, Wesley Fredericks and Jack
DeBraal, Defendants-Appellees.

Nos. 84–3020, 85–1305.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1985.

Decided April 24, 1986.

Richard Cates, Lawton & Cates, Madison, Wis., for plaintiffs-appellants.

Mary A. Moore, Muclahy & Wherry, S.C., Milwaukee, Wis., for defendants-appellees.

Percy L. Julian, Jr., Julian & Olson, S.C., Madison, Wis., NAACP amicus curiae.

Before BAUER, WOOD and ESCHBACH, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff Carol Zabkowicz was successful in an action for back pay brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Wisconsin Fair Employment Act, Wis.

Stat.Ann. § 111.31 *et seq.* The district court, however, denied her motion for attorneys' fees, 601 F.Supp. 139. She appeals this denial. Mrs. Zabkowicz along with her husband Stanley (the "plaintiffs") have also moved for an order certifying a question to the Wisconsin Supreme Court. The plaintiffs contend that the district court erred in concluding that the Wisconsin Worker's Compensation Act, Wis.Stat. Ann. § 102.01 *et seq.*, barred several of their state tort claims for intentional infliction of emotional distress. As an alternative to certification, the plaintiffs seek reversal of the district court's ruling. In addition, the plaintiffs appeal the court's decision dismissing other state tort claims against Carol Zabkowicz's co-workers for lack of subject matter jurisdiction.

We deny the plaintiffs' motion for certification and affirm the decisions of the district court dismissing the state tort claims. With respect to the fee issue, however, we reverse the district court's denial of attorneys' fees and remand this case for a fee determination.

## I.

The present action arose out of the sexual harassment of Carol Zabkowicz during the time she was employed as a general warehouse worker at a West Bend facility in Oak Creek, Wisconsin. Mrs. Zabkowicz, who began working for West Bend in 1977, initially maintained a satisfactory working relationship with her co-employees. Once her brother-in-law began working at the facility, however, this relationship began to deteriorate. In fact, the district court found that a "campaign" of sexual harassment was waged against Carol Zabkowicz.[1] Eventually, Mrs. Zabkowicz sought and received permission to take a medical leave of absence beginning on April 26, 1982. She returned to work three weeks later only to have to take another leave for illness on June 17, 1982. Dr. Calvin Gillespie diagnosed Zabkowicz's illness as "psychophysi-

ological gastro-intestinal disease due to harassment at work." Mrs. Zabkowicz once again returned to work on August 17, 1982.

Shortly after taking her first leave of absence, Mrs. Zabkowicz filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). An investigation by officials of the EEOC and West Bend was conducted in June 1982. As a result of this investigation, disciplinary action was taken against several of Mrs. Zabkowicz's co-workers who had been involved in the sexual harassment, including defendants Rick Cyrulik, Jeffrey Piotrowski, Larry Romans and Frank Rozina. After this action was taken, the sexual harassment ceased.

The plaintiffs commenced the present action on February 8, 1983, seeking relief on a variety of grounds. First, Carol Zabkowicz alleged that West Bend and three of its supervisory personnel, Robert Schommer, Wesley Fredericks and Jack DeBraal, had violated Title VII and the Wisconsin Fair Employment Act by failing to protect her from sexual harassment after she had notified them of its occurrence. Second, both Carol and Stanley Zabkowicz sought relief for intentional infliction of emotional distress against (1) co-workers Cyrulik, Piotrowski, Romans and Rozina, (2) West Bend and the three supervisory employees, and (3) the union to which Carol Zabkowicz belonged as well as the union's business agent. Finally, Mrs. Zabkowicz asserted labor claims against West Bend, the three supervisory employees, the union and the union's business agent alleging that these defendants had breached their duty of fair representation. The fair representation claims as well as the tort claims against the union and its agent were eventually dismissed in accordance with the parties' stipulation.

The parties also agreed that the state tort actions against the individual co-workers be severed for trial. In addition, the district court dismissed the plaintiffs' tort

---

1. The plaintiffs' brief contains graphic descriptions of the sexual harassment that was directed against Mrs. Zabkowicz. Because defendants

do not appeal the district court's decision on the merits of the sexual discrimination claim, we see no need to recount these details here.

claims against West Bend and the supervisory employees on grounds that they were barred by the exclusive remedy provision of the Wisconsin Worker's Compensation Act. The plaintiffs' remaining claims against West Bend and the supervisory employees were tried to the court. The district court ruled that West Bend had violated both Title VII and the Wisconsin Fair Employment Act. Judgment was entered solely against West Bend and the court ordered the company to pay Carol Zabkowicz back pay in the amount of $2,763.20. After this judgment was entered, the only remaining claims yet to be litigated were the state tort claims against the defendant co-workers. Later, the court, on its own motion, dismissed these claims for lack of subject matter jurisdiction. The court concluded that it could not exercise pendent jurisdiction over these claims because there was no independent basis of federal jurisdiction with respect to the co-workers.

As a result of her success with the sexual discrimination action, Mrs. Zabkowicz sought attorneys' fees of $127,515, plus expenses of $20,785, pursuant to 42 U.S.C. § 2000e–5(k) and the Wisconsin Fair Employment Act. The district court refused to make a fee award noting that, among other things, her fee request was highly exaggerated and failed to distinguish between the hours spent on the Title VII claim and the hours spent on "noncompensable" claims. The court did, however, award Mrs. Zabkowicz $10,000 for expenses incurred in prosecuting the Title VII action.

After the district court's decision dismissing both the state tort claims against the co-workers for lack of subject matter jurisdiction and the tort claims against West Bend and the supervisory employees, the plaintiffs filed a notice of appeal with this court (No. 84–3020). Subsequently, a second notice of appeal was filed seeking review of the district court's denial of attorneys' fees (No. 85–1305). To facilitate our review, these two appeals have been consolidated.

## II.

### A. Worker's Compensation Act as Exclusive Remedy

◼ The plaintiffs first argue that the district court erred in dismissing their tort claims against defendants West Bend, Schommer, Fredericks and DeBraal. The court ruled from the bench that the plaintiffs' tort claims were barred by the exclusivity provision of the Wisconsin Worker's Compensation Act (the "WCA"). The plaintiffs have moved that we certify this question to the Wisconsin Supreme Court or, in the alternative, reverse the decision of the district court.

Where permitted by the highest court of the state, Circuit Rule 13 provides for the certification of state law questions which control the outcome of a pending case. Wisconsin law provides that the Wisconsin Supreme Court may accept certified questions of state law from this court. Wis. Stat.Ann. § 821.01 *et seq*. Nonetheless, because we find that the Wisconsin Supreme Court has already reached the issue before us, we deny the plaintiffs' motion for certification. *See* Wis.Stat.Ann. § 821.01 (West 1985 Supp.).

In pertinent part, Wis.Stat.Ann. § 102.-03(1) (West 1973) provides that liability under the WCA will only exist against an employer where the following conditions are satisfied:

(a) Where the employe sustains an injury.

(b) Where, at the time of the injury, both the employer and employe are subject to the provisions of [the WCA].

(c)1. Where, at the time of the injury, the employe is performing service growing out of and incidental to his or her employment....

(d) Where the injury is not self-inflicted.

When these conditions are met, the WCA is "the exclusive remedy against the employer, any other employe of the same employer and the worker's compensation insurance carrier." Wis.Stat.Ann. § 102.03(2) (West 1985 Supp.).

The only issue the parties contest is whether Mrs. Zabkowicz's alleged emotional distress is an injury compensable under the WCA. If it is, then the plaintiffs' tort claims are barred by the exclusivity provision. *See Coleman v. American Universal Insurance Co.*, 86 Wis.2d 615, 273 N.W.2d 220, 222 (1979). If Mrs. Zabkowicz's alleged injury is not compensable, however, then the district court erred in dismissing the tort actions.

A covered injury under the WCA is defined as

> mental or physical harm to an employe caused by accident or disease ... [including] mental harm or emotional stress or strain without physical trauma, if it arises from exposure to conditions or circumstances beyond those common to occupational or nonoccupational life.

Wis.Stat.Ann. § 102.01(2)(c) (West 1985 Supp.). Relying on this definition, the plaintiffs argue that emotional stress caused by sexual harassment is not an accidental injury and is therefore not compensable under the WCA. The district court disagreed. The court first noted that "[w]hile intentional injury by an employer is generally considered to be not accidental," the plaintiffs' complaint does not allege any intentional acts of sexual harassment either by West Bend or the supervisory employees; rather, the plaintiffs' tort actions were based on the defendants' failure to prevent the harassment. The court, relying on two decisions of the Wisconsin Supreme Court, *School District No. 1, Village of Brown Deer v. Department of Industry, Labor & Human Relations*, 62 Wis.2d 370, 215 N.W.2d 373 (1974), and *Swiss Colony, Inc. v. Department of Industry, Labor & Human Relations*, 72 Wis.2d 46, 240 N.W.2d 128 (1976), found that the tort claims against the corporation and its supervisory personnel are barred by the exclusivity provision of the WCA. We

find that the district did not err in dismissing plaintiffs' tort claims on this basis.[2]

*School District No. 1* involved a high school counselor who sought benefits under the WCA for an anxiety reaction she incurred after seeing a list of student recommendations, one of which suggested her removal from the staff. The Wisconsin Supreme Court held that the emotional distress the claimant had suffered "is no greater than the many differences and irritations to which all employees are subjected and is not an accident compensable" under the WCA 215 N.W.2d at 377. The Court noted, however, that it did not mean to imply that an employee

> who, after being criticized and berated by an employer or whomever for a significant period of time, suffers a mental injury should be denied compensation. The common sense viewpoint of the average man would deem such a situation to be accidental and liability would be found under [the WCA].

*Id.* at 378.

Similarly, in *Swiss Colony*, the Court upheld an award of benefits to an employee who suffered emotional trauma as a result of her job. The Court concluded that, among other factors, the "nerve-racking" nature of her job and the abrupt, highly critical and berating attitude of her immediate supervisor all contributed to the claimant's compensable emotional injury. 240 N.W.2d at 130–33.

Based on these decisions of the Wisconsin Supreme Court, we conclude that the district court properly dismissed the plaintiffs' tort claims against West Bend and the three supervisory personnel. Like the claimant in *Swiss Colony*, Mrs. Zabkowicz was subjected to harassment for a significant period of time. The Wisconsin Supreme Court has determined that such an injury is compensable under the WCA.

---

**2.** We do note that the district court's order entered on October 24, 1984, dismissed all of the plaintiffs' tort claims against West Bend and the three supervisory personnel. On appeal, the plaintiffs do not attempt to distinguish Carol Zabkowicz's tort claims from her husband's for purposes of arguing that the latter claims, because they involve distinct injuries not incurred while in the workplace, are not barred by the exclusivity provision of the WCA. Accordingly, we do not reach the merits of that issue.

The district court did not err, therefore, in ruling that the plaintiffs' tort claims were barred.[3]

In so holding, we do not lightly dismiss the plaintiffs' argument that Mrs. Zabkowicz's injury was not "accidental" and that therefore worker's compensation is not the exclusive remedy in this case. The plaintiffs rely on the Wisconsin Supreme Court's decision in *Beck v. Hamann*, 263 Wis. 131, 56 N.W.2d 837 (1953), where the Court defined "accident" for purposes of the WCA as

> a fortuitous event, unexpected and unforeseen by the injured person, and that even though the injury were intentionally inflicted by another, if it was unforeseen and unexpected by the person injured, it constituted an accident within the meaning of the [WCA].

56 N.W.2d at 840. Citing *Beck*, among other cases, the Court in *School District No. 1* elaborated upon its definition of accident by noting that "[i]f the result of the act is unexpected or unforeseen, then the injury is accidental." 215 N.W.2d at 376. Given this definition, the plaintiffs argue that Carol Zabkowicz's injury was not acci-

dental because the sexual harassment was a foreseeable part of her every working day.

The plaintiffs' argument misses the point, however. The cause of the injury, in this case sexual harassment, need not be unforeseeable in order for an "injury" to fall under the accident rubric; rather, it is sufficient if the injury itself is unexpected. Accordingly, although the plaintiffs argue vigorously that the sexual harassment was foreseeable, there is no contention that the emotional trauma which allegedly resulted was expected or foreseen. Any injuries incurred, therefore, were "accidental," as that term is defined by the Wisconsin Supreme Court.[4]

### B. Pendent State Claims Against Co-Employees

The plaintiffs' next contention is that the district court abused its discretion in dismissing their state tort claims against defendants Cyrulik, Piotrowski, Romans and Rozina. The court dismissed the plaintiffs' state claims against these defendants after concluding, *sua sponte*, that it lacked subject matter jurisdiction over the pendent

---

**3.** We do not find our conclusion inconsistent with the result reached by the court in *Keenan v. The Foley Co.*, 117 L.R.R.M. (BNA) 2069, 35 F.E.P. 937 (E.D.Wis.1984). In *Keenan*, the district court noted that tort claims for intentional infliction of emotional distress arising out of an alleged unlawful termination are not barred by the exclusivity provision of the WCA. The trial judge found that in cases arising

> in the realm of termination rather than employment, I do not think the purposes behind the [WCA] would be served by shoe horning [sic] all of an employee's termination remedies into the administrative setting of [Worker's] Compensation.

35 F.E.P. Cases at 938.

Unlike the situation in *Keenan*, the present case arises in the realm of employment as opposed to termination. The plaintiffs' remedy, therefore, is the WCA.

**4.** The plaintiffs relying on, among other cases, *Sullivan v. United States*, 428 F.Supp. 79 (E.D. Wis.1977), argue that worker's compensation laws were never intended to prohibit recovery for racial and sexual discrimination. In *Sullivan*, the plaintiff, a post office mechanic who claimed his discharge was a result of racial

harassment and discrimination, sued both his union and the United States for emotional distress and economic harm. The United States argued that the federal equivalent of the WCA was the plaintiff's exclusive remedy. The court disagreed, however, noting that the federal law does not encompass "such claims as are presented here for discrimination, mental distress, or loss of employment." 428 F.Supp. at 81. Relying on this decision, the plaintiffs argue that the WCA similarly does not cover emotional injuries resulting from discrimination. We disagree.

First, as the plaintiffs readily concede, unlike the federal worker's compensation law, the Wisconsin law explicitly covers emotional injuries. Second, and more important, is the fact that the Wisconsin Supreme Court has held that emotional trauma, which is in part the result of sexual discrimination, is compensable under the WCA. In *Swiss Colony*, the Court noted that an employee's nervous breakdown was a compensable injury under the WCA even though it was in part the result of a supervisor's actions which were "negative, brusque, and belittling, especially to women." 240 N.W.2d at 131. The plaintiffs' reliance on *Sullivan* and its progeny arguing that such injuries are noncompensable under the WCA is misplaced.

parties (*i.e.*, parties over which there is no independent basis of federal jurisdiction).

■ In order to establish pendent party jurisdiction a two-prong test must be satisfied. First, the requirements of Article III of the Constitution for the exercise of federal judicial power must be fulfilled. Second, relevant statutory limitations on the exercise of pendent jurisdiction must be examined. *Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976). *Accord Vantine v. Elkhart Brass Manufacturing Co.*, 762 F.2d 511, 518 (7th Cir.1985); *United States ex rel. Hoover v. Franzen*, 669 F.2d 433, 439–40 (7th Cir. 1982). The constitutional prong of the test is satisfied when (1) there is a federal claim which is of sufficient substance to confer federal jurisdiction and (2) the federal and state claims are derived "from a common nucleus of operative fact" such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding...." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The second prong of the test requires "an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether 'Congress in [that statute] has ... expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978) (quoting *Aldinger*, 427 U.S. at 18, 96 S.Ct. at 2422). In other words, the "analysis turns on whether it can be demonstrated that Congress has intended that the particular pendent claim not be brought in federal court." *Franzen*, 699 F.2d at 441 n. 15.

■ Even when the two-part test is satisfied, however, the exercise of pendent jurisdiction is still a matter left to the discretion of the district court, and is not a right belonging to any plaintiff. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139 (exercise of pendent jurisdiction justified by "considerations of judicial economy, convenience and fairness to litigants"). The district court's refusal to exercise pendent jurisdiction should be reversed, therefore, only upon a showing of abuse of discretion.

■ In the present case, there is no question that Mrs. Zabkowicz's Title VII action is of sufficient substance to confer federal jurisdiction. Furthermore, we agree with the district court's conclusion that Mrs. Zabkowicz's state tort claims and her federal Title VII action arise out of a "common nucleus of operative fact." The constitutional prong of the pendent jurisdiction test is therefore satisfied. We therefore must ascertain, for purposes of the second prong of the test, whether Congress intended either explicitly or implicitly that state tort claims against co-employees not be brought in federal court in a Title VII action.

As the district court correctly noted, Title VII does not provide a means for an employee to sue non-supervisory co-workers for discriminatory acts. *See, e.g., Johnson v. Richmond County*, 507 F.Supp. 993, 995 (S.D.Ga.1981) (named individual defendants, as opposed to defendant employer, are improper parties under Title VII), *aff'd in part*, 732 F.2d 942 (11th Cir.1984). From this, the defendants argue that Congress must not have intended federal courts to exercise pendent jurisdiction over such claims when they are brought in conjunction with a Title VII action. By limiting those parties against whom Title VII actions could be brought, it could be contended that Congress may have impliedly left the jurisdiction to hear nonfederal claims against individuals unrelated to the Title VII action to the appropriate state court.[5]

---

5. We do not imply, however, that simply because "Congress has expressly conferred jurisdiction over a certain class of cases" that it has necessarily "excluded other claims from being subject to pendent jurisdiction." *Franzen*, 669 F.2d at 440 n. 15. Such a conclusion "would unreasonably suggest that because federal district courts are courts of limited jurisdiction *every* grant of jurisdiction by Congress would by implication remove certain pendent claims

This is arguably the stance the Supreme Court took in *Aldinger* which involved a suit against county officials and the county itself following the plaintiff's discharge as a clerical worker in the county treasurer's office. The plaintiff filed an action under 42 U.S.C. § 1983 as well as bringing state tort claims against the county and its officials. The district court concluded that the county was not amenable to suit under section 1983, and its corresponding jurisdictional grant, 28 U.S.C. § 1343(3), and therefore dismissed this claim.[6] Subsequently, the court also dismissed the state claims against the county finding that pendent jurisdiction could not be exercised in the absence of an independent federal claim. In upholding the district court's decision, the Supreme Court noted:

> From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant "derive from a common nucleus of operative fact."

*Id.* 427 U.S. at 14, 96 S.Ct. at 2420 (quoting *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138). The Court went on to conclude that be-

cause Congress excluded counties from liability under section 1983 it can be argued

> with a great deal of force that the scope of that "civil action" over which the district courts have been given statutory jurisdiction should not be so broadly read as to bring [counties] *back* within that power merely because the facts also give rise to an ordinary civil action against them under state law. In short, as against a plaintiff's claim of *additional* power over a "pendent party," the reach of the statute conferring jurisdiction should be construed in light of the scope of the cause of action as to which federal judicial power *has* been extended by Congress.

*Id.* at 17, 96 S.Ct. at 2421 (emphasis in original). In denying pendent party jurisdiction the district court here, analogizing to *Aldinger*, concluded that because co-employees are excluded from liability under Title VII, they should not be brought back into federal court merely because the plaintiffs' state claims against them share a "common nucleus of operative fact" with the Title VII action against West Bend.

The plaintiffs correctly point out, however, that the *Aldinger* Court recognized that a different case is posed when jurisdiction over the federal claim is vested exclusively in the federal courts. "When the grant of jurisdiction to a federal court is exclusive . . . the argument of judicial economy and convenience can be coupled with the additional argument that *only* in federal court may all of the claims be tried together." *Id.* at 18, 96 S.Ct. at 2422 (emphasis in original). The plaintiffs, relying on several decisions holding that jurisdiction over Title VII actions is vested exclu-

from the jurisdiction of the district courts." *Id.* (emphasis in original). Rather, the statutory analysis must focus on whether Congress intended to prohibit the exercise of pendent jurisdiction. *Id.* at 441 n. 15. Because of our resolution of this case, *see infra*, we need not determine whether Congress, in enacting Title VII, sought to bar the exercise of pendent jurisdiction.

**6.** In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Court ruled that coun-

ties were not amenable to section 1983 actions. Subsequent to the decision in *Aldinger*, the Court, overruling *Monroe*, held that counties are subject to such lawsuits. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Although having an effect on the precise factual setting of *Aldinger*, *Monell* does not undercut the pendent jurisdiction analysis presented by the Supreme Court in that case. *See Owen*, 437 U.S. at 372–73 n. 12, 98 S.Ct. at 2402 n. 12.

sively in the federal courts, *e.g., Kyriazi v. Western Electric Co.*, 476 F.Supp. 335 (D.N.J.1979), argue that pendent party jurisdiction should have been exercised in the instant action.

Nonetheless, even if we accept the plaintiffs' argument and assume, *arguendo*, that Title VII jurisdiction is exclusively federal and further assume that Congress did not intend to bar pendent state claims from being brought against co-workers in conjunction with Title VII actions, we still find that the district court did not abuse its discretion in refusing to exercise pendent party jurisdiction. As the Court in *Gibbs* noted, the rationale underlying the existence of pendent jurisdiction is convenience, judicial economy and fairness to the litigants. 383 U.S. at 726, 86 S.Ct. at 1139. This point was further refined in *Aldinger* where the Court acknowledged that in instances of exclusive federal jurisdiction, the exercise of pendent party jurisdiction may be warranted since *"only* in a federal court may all of the claims be tried together." 427 U.S. at 18, 96 S.Ct. at 2422 (emphasis in original).

The plaintiffs' case, however, never provided the opportunity for the pendent claims against the co-workers to be tried in conjunction with the underlying Title VII action. By stipulation, the parties agreed to sever the tort claims against the co-employees for trial. Any judicial economy and convenience that may have been derived from litigating this case in one proceeding was therefore lost. *See Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 187 (7th Cir.1984). Accordingly, we hold that

even if the exercise of pendent party jurisdiction may generally be appropriate in similarly situated Title VII actions, *see Phillips v. Smalley Maintenance Services, Inc.*, 711 F.2d 1524, 1531 (11th Cir.1983) (holding that district court did not abuse its discretion in exercising pendent jurisdiction over state law claims in a Title VII action), given the factual posture of this case the district court's dismissal of the claims against the defendant co-employees was not an abuse of discretion.[7]

### C. Attorneys' Fees and Expenses

■ For purposes of Carol Zabkowicz's Title VII action, 42 U.S.C. § 2000e–5(k) provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs...." Plaintiffs are deemed to be prevailing parties for purposes of recovering fees " 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). Generally, attorneys' fees are awarded to such plaintiffs in Title VII actions as a matter of course, "unless special circumstances would make such an award unjust." *Eichman v. Linden & Sons, Inc.*, 752 F.2d 1246, 1248 (7th Cir.1985). In determining the amount of a fee award, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.[8]

---

7. The plaintiffs also argue, relying on the Supreme Court's decision in *Owen*, that West Bend's cross-claims against the defendant co-employees for indemnification justifies the exercise of pendent party jurisdiction. The district court found that no cross-claims existed when it dismissed the plaintiffs' claims. The court, citing *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), noted that no right of indemnification exists under Title VII and, since the plaintiffs had succeeded only on the Title VII claim, that West Bend's cross-claims were of no consequence. We find that the district court did not abuse its discretion in refusing to exercise pendent party jurisdiction on these grounds.

8. Relying on the Supreme Court's decision in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), Mrs. Zabkowicz argues that the district court erred in basing its decision on the purported inaccuracy of the fee petition because she contends the defendants failed to submit evidence challenging the reasonableness of the hours charged by her counsel. We disagree.

In reviewing an award of attorney's fees, the Court in *Blum* did decline to consider the petitioner's argument that the hours charged by respondents' counsel were unreasonable because the petitioners had failed to present evidence on this point to the district court. *Id.* 104

An award of attorneys' fees by the district court or the court's refusal to award fees should generally be reversed on appeal only upon a showing of abuse of discretion. *Id.* at 437, 103 S.Ct. at 1941; *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1163 (7th Cir.1983). "This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. An abuse of discretion warranting reversal "occurs only when no reasonable person could take the view adopted by the trial court." *Lynch v. City of Milwaukee*, 747 F.2d 423, 426 (7th Cir.1984).

In the present case, after reviewing the data submitted by Mrs. Zabkowicz's attorneys, the district court refused to award any fees. The trial judge noted that although he found Zabkowicz to be a prevailing plaintiff, the number of hours for which she sought compensation was so overly exaggerated as to make a denial of fees appropriate. Additionally, the district court concluded that the plaintiff's fee petition was "seriously flawed" because it failed to distinguish between hours expended on the Title VII action and those spent on her other claims. The court noted that out of a total of over 800 hours of work claimed by the plaintiff's attorneys, only 24.6 of these hours were attributed to work on "noncompensable" (*i.e.*, non-Title VII) claims. The court also concluded that the fee petition was "based in part on an after-the-fact reconstruction rather than contemporaneous records as the statute requires." Finally, the court noted that the plaintiff

had been given an offer of $20,000 to settle the entire litigation which she rejected and instead proceeded to trial on a Title VII back pay claim which could yield, at a maximum, a recovery of $2,763.20.

Given these facts, and relying on our decisions in *Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605 (7th Cir.1982) and *Brown v. Stackler*, 612 F.2d 1057 (7th Cir.1980), the court denied Mrs. Zabkowicz's motion for fees. After reviewing the record, we conclude that the district court's total denial of fees was an abuse of discretion. Contrary to the court's conclusion, we do not believe that our decisions in either *Vocca* or *Brown* mandate a complete denial of fees in this case.

In *Brown*, we affirmed the district court's denial of fees to a plaintiff under 42 U.S.C. § 1988.[9] We noted that the plaintiffs' action brought pursuant to section 1983 "raised an issue which everyone knew would be controlled by the results of litigation pending in other courts." 612 F.2d at 1058. Under the circumstances, the trial court found, and we concurred, that the plaintiffs' claim of over 800 billable hours "was so intolerably inflated" that a complete denial of fees was warranted. *Id.* at 1059. We concluded that "it was utterly unreasonable to expend that amount of time on a plain and simple case, which would almost automatically be disposed of by the decision in [another case] whose determination was being awaited." *Id.*

Similarly, in *Vocca* we affirmed the district court's denial of fees in a suit brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* The court refused to award fees on two

S.Ct. at 1545 n. 5. Unlike the situation in *Blum*, however, Mrs. Zabkowicz's appeal arises in the context of a challenge to the district court's finding that the fees charged were unreasonable, as opposed to defendants raising this issue for the first time on appeal. The party seeking fees has the burden of establishing the reasonableness and accuracy of the fee petition to the satisfaction of the district court. The court should award fees only to the extent the applicant establishes that the fees requested are reasonable. Contrary to the plaintiff's contention, the district court did not improperly shoulder defendants' burden of challenging the fee peti-

tion when it found her fee request to be unreasonable.

**9.** Congress intended that the standards for awarding fees under both section 2000e–5(k) and the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, be the same. S.Rep. No. 94–1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S. Code Cong. & Admin. News 5908, 5912. The Supreme Court has applied the same standards to both section 2000e–5(k) and section 1988. *See Hensley*, 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7.

grounds: (1) plaintiff's counsel "unreasonably prolonged the litigation" by refusing to accept a favorable settlement offered early in the litigation; and (2) plaintiff's counsel failed to keep accurate time records reflecting work done in the case. 686 F.2d at 608. We concluded that counsel's fee schedule "failed to set forth a sufficient description of the type of work performed, the identity and qualifications of the persons who performed the work and their normal billing rates for the relevant time period." *Id.* Our review of the record indicated that counsel's fee petition conveyed the impression that all of the work had been done by an attorney, while in fact some of it had been done by a law student. Moreover, we found that the plaintiff's counsel had sought compensation "for at least two court appearances that were never made." *Id.* Under these circumstances, we concluded that the district court had not abused its discretion in refusing to award fees.

Contrary to both *Brown* and *Vocca*, the fee request in the present case is not so egregious nor is counsel's recordkeeping so inept that a complete denial of fees is warranted, although we readily agree with the district court that the fee request for $127,-515 in the limited circumstances of this case is undoubtedly excessive and unreasonable. *See Jordan v. United States Department of Justice*, 691 F.2d 514, 518 (D.C.Cir.1982) (noting that a "[t]otal denial of requested fees ... is a stringent sanction, to be reserved for only the most severe of situations, and appropriately invoked only in very limited circumstances"). Unlike *Brown*, there is no indication that Carol Zabkowicz's Title VII claim would be adjudicated in any other forum. Similarly, unlike *Vocca*, the settlement offer in Zabkowicz's case was presented the morning of trial. Her refusal to settle at that late date did not so unreasonably prolong her

suit that a complete denial of attorneys' fees is warranted. Finally, the records kept by counsel in this case were not so wholly inadequate or inaccurate as to make a total denial of fees appropriate. Our review of the record indicates that counsel's records detailed which attorney had worked on any particular matter and the time such work involved. We therefore conclude that the district court abused its discretion in denying any fees and, accordingly, remand this case for a reasonable fee determination in accordance with *Hensley v. Eckerhart, supra*, and its progeny.[10]

On remand the court is, of course, free, either with or without an evidentiary hearing, to reduce the hours to be compensated to a number it considers the plaintiff established as being reasonably necessary to pursue her civil rights action. Similarly, the court in its discretion may exclude from the time to be compensated those hours it believes are based on inaccurate or misleading records.

Although we leave the determination of a reasonable fee to the district court, we do reach two issues raised by the parties that affect that determination. First, Mrs. Zabkowicz argues that she is entitled to compensation for all of the time expended in prosecuting this case, including the hours spent on the non-Title VII claims. She relies on the Supreme Court's decision in *Hensley* to contend that the time spent on the tort and labor claims that were eventually dismissed is compensable under section 2000e–5(k) if reasonably related to the successful civil rights claim. In *Hensley*, the Court held that a plaintiff may be entitled to recover for time spent on unsuccessful civil rights claims if they share with the civil rights claims on which the plaintiff prevailed "a common core of facts" or are "based on related legal theories." 461 U.S. at 435, 103 S.Ct. at 1940. "Where a plaintiff has obtained excellent results, his at-

---

10. The NAACP Legal Defense and Educational Fund, Inc. ("LDF"), was permitted to file a brief *amicus curiae* in this case addressing the district court's denial of attorneys' fees. Among other things, the LDF maintains that section 2000e–5(k) creates a property interest protected by the

Fifth Amendment and that a denial of attorneys' fees without a hearing is a violation of due process. Because we find that the district court abused its discretion in denying fees for other reasons, we do not consider the constitutional argument advanced by the LDF.

torney should recover a fully compensatory fee" which "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* As the Court noted:

> Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* (footnote omitted).

■ By its own terms, however, *Hensley* applies only to the award of fees for unsuccessful civil rights claims brought pursuant to statutes which provide for the award of attorneys' fees. It is arguable, therefore, that if a plaintiff fails to prevail on claims not directly compensable under a fee-shifting statute, in this case the labor and tort claims, that no fees should be awarded for time expended on these claims. We believe, however, that such an approach would be "contrary to the precepts established in *Hensley* ... because it fails to consider the interrelated nature of the lawsuit as a whole." *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 137 (3d Cir. 1984). *See Aubin v. Fudala*, 782 F.2d 287, 291 (1st Cir.1986); *Garrity v. Sununu*, 752 F.2d 727, 734–35 (1st Cir.1984); *Huffman v. Hart*, 576 F.Supp. 1234, 1237 (N.D.Ga. 1983). *See also Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 767 (7th Cir.1982) (plaintiffs entitled to fees under section 2000e–5(k) for "[t]heir efforts to have the defendant debarred from its federal contracts on the basis of the same discrimination charged in the Title VII action" where all time expended in an attempt "to move the Title VII case toward ultimate disposition"), *cert. denied*, 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). Where several claims arise out of a common factual core or are based on related legal theories, separating "out the legal services rendered with respect to these overlapping claims would be an exercise in futility." *Garrity*, 752 F.2d at 735. In accordance with *Hensley*, we believe that prevailing plaintiffs may be entitled to compensation for time expended on such related claims. We must

therefore determine whether the various claims in Mrs. Zabkowicz's case are sufficiently related to justify the fee award she seeks.

As we have noted previously, *Hensley* provides no precise method for determining whether claims are related or unrelated. Nonetheless, "a useful tool for making this determination is to focus on whether the claims seek relief for essentially the same course of conduct." *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir. 1983). From this perspective, "an unsuccessful claim will be unrelated to a successful claim when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." *Id.* To ascertain whether Mrs. Zabkowicz is entitled to fees for her unsuccessful labor and tort claims, we must examine each claim separately.

■ Mrs. Zabkowicz first contends that she is entitled to fees for time expended in bringing her tort claims against West Bend, the supervisory employees and the defendant co-workers. Although these claims are based on distinct legal theories, they undeniably involve a common core of facts. The tort claims sought to remedy the same course of conduct that gave rise to the Title VII action. Accordingly, Mrs. Zabkowicz may be entitled to recover all or a portion of the attorneys' fees incurred in prosecuting her tort claims. The precise amount of her fee award will, of course, depend upon the district court's analysis of the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.

■ Apart from her own tort claims, Mrs. Zabkowicz also appears to be seeking fees for the time expended in bringing her husband's tort claims. We agree with the district court that these claims are noncompensable under section 2000e–5(k). Clearly, in comparison to the Title VII action,

Stanley Zabkowicz's tort claims are premised on different legal theories; moreover, the two actions do not share the requisite common core of facts. Although Stanley Zabkowicz's alleged injury was incurred as a result of the sexual harassment his wife suffered, the factual underpinnings of his claims are distinctly different. With respect to the issues of causation and damages, for example, the facts necessary to support Stanley Zabkowicz's tort action have little similarity with the facts supporting his wife's Title VII claim. Stanley Zabkowicz's tort action would center around his reaction to and alleged injury resulting from his wife's situation. Evidence relevant to whether Mr. Zabkowicz's injury was caused by the injuries his wife suffered as well as evidence substantiating the extent of his personal injury would necessarily be irrelevant to the litigation of Carol Zabkowicz's Title VII claim. In short, Stanley Zabkowicz's tort claims are ones we could expect him to raise in a separate lawsuit and, accordingly, no fees should be awarded for time expended in prosecuting them. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940 ("unrelated claims [should] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim").

■ Finally, Mrs. Zabkowicz seeks fees for the labor claims against West Bend and the labor and tort claims filed against her union and its agent. Although, relative to the Title VII action, these claims involve different legal theories and arguably arise from distinct factual bases, we need not decide these issues. The *Hensley* decision provides that fees may be awarded under the appropriate circumstances for time spent on *unsuccessful* claims. In the present case, however, Mrs. Zabkowicz stipulated to the dismissal of these tort and labor claims. We believe that there is a significant difference, for purposes of a fee award, between a party losing on a claim that was fully litigated and a party willingly dismissing a claim without receiving some type of concession in return. In simply dismissing a claim, a plaintiff does nothing to advance the vindication of his or her civil rights. *See Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 418, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978) (part of policy rationale supporting award of attorneys' fees is to encourage a Title VII plaintiff to act as a private attorney general enforcing the civil rights laws). We recognize that a voluntary dismissal of a claim as part of a settlement, for example, that serves in whole or in part to vindicate the plaintiff's rights presents a different case. In such a situation, a fee award may be warranted. In Mrs. Zabkowicz's case, however, there is nothing in the record that would indicate that her dismissal of the tort and labor claims was the result of any action by the defendants that served to remedy civil rights violations. Accordingly, she is not entitled to fees under section 2000e–5(k) for bringing these claims.[11]

The second point we reach in passing is Mrs. Zabkowicz's argument that the district court erred in relying on the amount of financial recovery obtained in this case in denying a fee award. The court noted that "it is irresistibly apparent that no intelligent attorney would have invested 800 hours of work on a claim worth, at best, less than $3000." Mrs. Zabkowicz argues that the court's decision is contrary to, among other cases, the Supreme Court's decision in *Blum v. Stenson, supra.*

*Blum* involved a fee petition filed pursuant to section 1988. The Court noted that, similar to other fee-shifting statutes such as section 2000e–5(k), Congress intended that fee awards under section 1988 " 'not be reduced because the rights involved may be nonpecuniary in nature.' " 104 S.Ct. at 1546 (quoting S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6 (1976), *reprinted in* 1976 U.S. Code Cong. & Admin. News 5908,

---

11. Our result is no different than the one the parties themselves agreed to. The stipulations for dismissal provided that each party would bear their own costs and fees incurred with respect to the dismissed claims.

5913). Similarly, in *Lynch v. City of Milwaukee, supra,* we concluded that a nominal damage award in a section 1983 action need not necessarily result in a nominal fee award where the plaintiff also obtained declaratory and injunctive relief. 747 F.2d at 428–29. We found that "[l]itigants should be compensated for vindicating the public policy even when they do not personally benefit." *Id.* at 429.

■■■■ In light of these decisions, we do not believe that the district court erred in stating that counsel's expenditure of 800 hours on Zabkowicz's back pay claim was unreasonable. First, the cases which the plaintiff cites, although involving nominal damage awards, also resulted in the litigants receiving declaratory and injunctive relief. Suits which effectuate this type of nonpecuniary public policy vindication are the ones fee-shifting statutes such as section 2000e–5(k) seek to compensate prevailing plaintiffs for bringing. Mrs. Zabkowicz's Title VII action sought no such nonpecuniary remedy. Second, and more important, we do not read the district court's opinion as stating that the relatively small amount recovered by Zabkowicz must necessarily result in a small fee award; rather, the district court simply appears to have applied its experience and knowledge in a preliminary inquiry into what the plaintiff established as having been reasonably expended in litigating the sexual discrimination claim. This is precisely the analysis that the Supreme Court's decision in *Hensley* requires. We recognize that a reasonable fee award may in the appropriate case exceed the amount of the monetary recovery. *See Phillips,* 711 F.2d at 1530–31 (noting that "[t]he fact that the attorneys' fees award is larger than the back pay award in a Title VII action does not necessarily indicate an abuse of discretion"; the

court should also consider the effect the decision has on the development of the law and on similarly situated persons in ascertaining the appropriate award). At the same time, we merely point out that the fee-shifting statutes which are intended to encourage the vindication of important public policies are not meant to provide a windfall for either plaintiffs or their lawyers. Time unreasonably expended in prosecuting a claim should therefore be subtracted from the court's final fee award calculation.[12] We leave this determination in Mrs. Zabkowicz's case to the sound discretion of the district court.

■■■ Finally, Mrs. Zabkowicz contends that the district court abused its discretion in awarding her only $10,000 in expenses after she had initially requested $20,785.11. Out-of-pocket expenses incurred by a plaintiff in preparing for trial are compensable pursuant to section 2000e–5(k). *See Henry v. Webermeier,* 738 F.2d 188, 192 (7th Cir. 1984) (noting that identical language of section 1988 provides for the award of expenses); *Lenard v. Argenta,* 699 F.2d 874, 900 (7th Cir.), *cert. denied,* 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983). If this fee-shifting statute did not provide for an award of expenses, it would "fall short of its goal" of encouraging the prosecution of Title VII claims. *Henry,* 738 F.2d at 192. In ascertaining what is an appropriate expense award, the district court must exercise its discretion to "disallow particular expenses that are unreasonable whether because excessive in amount or because they should not have been incurred at all." *Id.*

The district court here, after reviewing the expenses incurred by the plaintiff including "filing fees, witness fees, service of process fees, transcript fees, and expenses

---

**12.** In the alternative, Mrs. Zabkowicz also argues that even if a nominal monetary judgment results in a small attorneys' fee award with respect to her Title VII claim, the same is not true for purposes of her factually identical claim under the Wisconsin Fair Employment Act. In support of her argument, Zabkowicz relies on two decisions of the Wisconsin Supreme Court, *Watkins v. Department of Indus-*

*try, Labor & Human Relations,* 69 Wis.2d 782, 233 N.W.2d 360 (1975), and *Watkins v. Labor and Industry Review Commission,* 117 Wis.2d 753, 345 N.W.2d 482 (1984). Because we find that under Title VII a small monetary judgment need not result in a proportionate reduction in the attorneys' fee award, we need not reach the plaintiff's argument based on Wisconsin law.

of counsel for travel and duplicating materials" concluded that $10,000 was an ample amount to cover the portion of costs attributable solely to the Title VII action. Because we find that Mrs. Zabkowicz may be entitled to fees for time expended on her unsuccessful tort claims, she may similarly be entitled to out-of-pocket expenses arising from these claims. Accordingly, we must also remand this case for a reconsideration of the cost determination, but only for the limited purpose of considering any expenses attributable to the unsuccessful tort claims.

### III.

For the reasons stated above, we affirm the district court's decision dismissing the plaintiffs' state tort claims against West Bend and its supervisory personnel on grounds that these claims are barred by the WCA. We also deny the plaintiffs' motion seeking certification of this issue to the Wisconsin Supreme Court. Furthermore, we affirm the district court's decision dismissing the state tort claims against defendants Cyrulik, Piotrowski, Romans and Rozina for lack of subject matter jurisdiction. Finally, we must reverse the court's decision denying Mrs. Zabkowicz's attorneys any fees and remand for the determination of such fees and costs as the district judge in the exercise of his seasoned discretion may determine to be fair and reasonable. Circuit Rule 18 shall not apply on remand.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.