**Stefan DIETTRICH, Plaintiff,**

**v.**

**NORTHWEST AIRLINES, INC., Defendant.**

**Civil Action No. 94–C–1066.**

United States District Court, E.D. Wisconsin.

June 25, 1997.

Ely Leichtling, Carmella Huser, Quarles & Brady, Milwaukee WI, for Defendant.

## DECISION AND ORDER GRANTING FEES

REYNOLDS, District Judge.

Stefan Diettrich ("Diettrich") sued Northwest Airlines Inc. ("Northwest") for Age Discrimination. The parties agreed to sever the damage and liability phases of the trial. In May 1996, a jury found that Northwest discriminated based on age but did not find that the discrimination was willful. After a bench trial in January 1997, the court awarded Diettrich $7,311.23 in back-pay, largely rejecting his theory of damages. The court has denied Northwest's post-trial motions. Diettrich has requested $96,937.50 in attorney fees (which he later increased) and $4,779.75 in costs. The court grants the motion in part.

Two attorneys worked on the case for Diettrich: Attorney Curry First who charges $200.00 an hour and attorney Elizabeth O'Neill who charges $125 an hour. Diettrich only submitted the fees for the liability trial and for the post-trial motions; Diettrich submitted no fees for the preparation or presentation of the damage trial. (Replacement Aff. of Curry First ¶ 7).

Northwest agrees that the hourly rates are reasonable, but it challenges the number of hours the attorneys billed. Northwest makes three basic arguments: (1) the court must reduce the request substantially to discount the time spent on the damage portion of the case and on willfulness; (2) the court should reduce the fees significantly because Deittrich's results were modest, if not slight; and (3) Northwest challenges a number of specific entries on the fee petition.

█ As a prevailing party, Diettrich deserves reasonable attorney fees. *See* 29 U.S.C. § 626(b). The plaintiff deserves the reasonable amount of time multiplied by the reasonable hourly rate. When a plaintiff wins on some claims and loses on others, the plaintiff may recovery on the unsuccessful claims only if they are legally or factually related to the prevailing claim. *Spellan v.*

Curry First, First Blondis Albrecht Bangert & Novotnak, Milwaukee, WI, for Plaintiff.

*Board of Educ.,* 59 F.3d 642, 645 (7th Cir. 1995). In that case, however, the court must consider the overall success of the law suit. *Id.* at 646; *Zabkowicz v. West Bend Co.,* 789 F.2d 540, 551 (*quoting Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)). The fee applicant must establish the award and document both the hours expended and the reasonable rate. *Zabkowicz,* 789 F.2d at 548. The party opposing the fees must state objections with particularity. *Hutchison v. Amateur Elec. Supply, Inc.,* 42 F.3d 1037, 1048 (7th Cir. 1994). Although the court may reduce the fees to which no objection has been made, the court must first give the party seeking the fees a chance to defends its request. *Spellan,* 59 F.3d at 646.

■ Even though Attorney First did not include any of the time spent after the jury verdict (except for post-trial motions), Northwest believes he is trying to recover for time spent on damages before the first trial: "a substantial portion of First's time had to have been spent pursuing his theory of damages, including reinstatement, front pay, benefits and dual living expenses." (Def. Opp. Br. at 19.) The implication is staggering. In a sworn affidavit, First said he did not include any time after the jury trial because his client was unsuccessful on the damage phase. If First spent substantial time on the damage issue before the jury verdict, First knew it could not be counted. So, only if First was trying to deceive the court would he have included substantial time spent on damage issues (before the verdict). The court can be no more emphatic: nothing in the record supports such a distasteful allegation.

On the contrary, attorney First is an ethical, honorable attorney whose credibility and good-faith is manifest.[1] Moreover, he deducted a substantial amount of time when he submitted his fee petition. First has accounted for his time. (*See* Pl.'s Reply Br. at 10.)

■ As to losing the willfulness claim, it is not a separate claim at all. In this case, Diettrich's proof of willfulness depended on largely the same witness and testimony as the liability issue. The issue was what inferences the jury would draw: no liability, liability without willfulness, or liability with willfulness. If Diettrich had not brought the willfulness allegation, his attorneys would have expended about the same amount of time. Therefore, the court sees no reason to reduce the award, because the willfulness claim was inseparable from liability and because, based on the overlap, the willfulness claim did not significantly affect the amount of time spent on the case.

■ Northwest, not overpreparation, dictated the amount of time Diettrich's attorneys spent on this case. Attorney First spent about 150 hours on trial preparation and 50 hours in trial. (*See* Pl.'s Reply Br. at 10 and Def.'s Opp. Br. at 19.) Northwest concludes the time was excessive because of the limited amount Diettrich could win. To the contrary, First could not have reduced the amount of trial time because he presented a bare-bones case; he avoided unnecessary information and redundant witnesses. Taking three hours of preparation for each hour of trial is not excessive or unreasonable. A good attorney who takes time to prepare understands the case better and saves time in presenting the case.

First spent much of his time parrying the thrusts of Northwest. Northwest decided to file a summary judgment motion; Northwest decided to file many briefs during trial; and Northwest decided to bring boxes and boxes of documents to trial which Diettrich's counsel had to review. In other words, Northwest's attorneys aggressively defended their client. Certainly, Northwest has nothing to complain about the quality of the representation it received; its attorneys pursued every angle of defense diligently and competently.

At the same time, when it comes time for the court to award the fees, it must not penalize Diettrich's attorneys for responding

---

1. First's reply brief is a perfect example of his integrity. Rather than rail at Northwest for implicitly questioning his truthfulness, First refutes the argument by categorizing his hours so that it is clear that he did not include time spent on the damage part of the case. (*See* Pl.'s Reply Br. at 10.)

to Northwest's defense. When a defendant files for summary judgment, the plaintiff's attorney must respond. When the defendant takes depositions, the plaintiff's attorney must prepare and review documents. When the defendant files briefs on a motion in limine, the plaintiff should take those arguments seriously. But, taking arguments seriously, preparing for depositions, and responding to summary judgment takes time, and time is expensive. Law is labor intensive; lawyers are paid for the diligence and the intelligence, commodities that cannot be mass produced on an assembly line.

Moreover, Northwest's comparison between what Diettrich received and what he sought is in error. Northwest compares the court award with the amount of damages claimed in a letter well before the first trial. Plaintiffs always cast the damage net as broadly as possible; that alone does not mean the eventual result is paltry. Otherwise, plaintiff's attorneys would face a conflict of interest. For their clients, they should be trying to recover as much in damages as possible. If courts are going to penalize plaintiffs' attorneys for not getting the best case scenario, however, the attorneys will have an incentive to undervalue a plaintiff's case. By undervaluing the case, a plaintiff's attorney could then claim that they achieved total success.

When a plaintiff has refused a settlement offer, however, then the comparison is valid. Attorneys are supposed to know a good offer when they see it; if they cannot convince the client, they risk having their fees reduced. Here, Northwest has not alleged that Diettrich refused a settlement offer. Therefore, the comparison between what was sought (always a prediction seen through rose-colored glasses) and what was achieved is largely irrelevant.

Finally, Northwest makes specific challenges regarding O'Neill's time and First's time. As to O'Neill's time, Diettrich has conceded most of the objections. For the rest, the court agrees with Diettrich. Time spent organizing files helps lawyers organize the case, know where the evidence is, and make a more precise presentation. The court allows O'Neill's charges on 3/27/95,

6/26/95, 6/27/95, and 10/25/95. Diettrich also concedes one charge made by First. As to the others, they are reasonable. On 6/7/94, attorney First called the EEOC, and Diettrich can recover for time spent before the required administrative agency, and he reviewed the file and called the defense counsel. These are sufficiently specific. On September 6, 1994, First conferred with his co-counsel; absent extraordinary circumstances, the fee petition need not record the details of the meeting. On September 8, 1994, First reviewed the file and called his client. On May 10, 1994, First called Judge Donegan who was a member of the Milwaukee Convention Center; the call was relevant to Diettrich's sales approach and his effectiveness. Similarly, reviewing the files on 4/26/96 and 5/1/96 was reasonable.

The court finds the $2,245 spent on preparing the fee petition to be reasonable.

Northwest also challenges the costs because Diettrich has not documented them and has not filed them in accordance with 28 U.S.C. § 1920. Furthermore, Northwest also thinks the court should reduce the costs for the same reasons it should reduce the fees. To begin, the costs are documented. The costs are in an exhibit to the First Affidavit. First swears that the costs are based on his records. Not only is the affidavit a sworn document, but by signing it, First must have complied with Fed. Civ. P. 11. As to the failure to comply with sec. 1920, the court finds this to be insubstantial. Finally, just as the court rejected Northwest's arguments on the attorney's fees, it rejects them on the costs as well.

### CONCLUSION

From the original request of $96,937.50, the court reduces the fees by the amounts conceded by Diettrich ($2,137.50 from O'Neill's time and $40 from First's time) and adds $2,245 for the time spent on preparing the fee petition.

The court grants Diettrich $97,005.00 in attorney's fees and $4,779.75 in costs.